Nott, J.,
delivered the opinion of the court:
When the Twenty-per-cent. Oases were first before this court, it was held that the Twenty-per-cent. Resolution February 28,1867, (14 Stat. L., 569,) was a remedial statute, designed to increase the salaries of those persons in the civil service whose compensation was limited by law. Conversely, it was thought that the statute did not extend to ordinary employés whose compensation was unlimited, and who were receiving the market-value of their services, and it was not supposed that the character of the compensation, whether by the day, the month, or the piece, could affect the character of their employment, nor that the purpose of Congress could have been to thrust an additional compensation upon those who were receiving all that they had specifically contracted for. {Baker’s Case, 4 C. Cls. B., 227.) The Supreme Court, however, subsequently held that laborers, mechanics, machinists, &c., employed by the Government, under an Executive Department, are in the civil service, and entitled to the benefits of the resolution. But a distinction was *451 made by the Supreme Court between those persons who were paid by the piece and those who were paid by time. Thus, if a man were employedinthe Bureau of Engravingand Printing under the immediate direction of a Government officer, and paid by the day, he was in the civil service; but if another were employed in the same room, and under the direction of the same officer, and upon the same work, but was paid by the piece, lie was not in the civil service. (Twentyper-cent. Oases, 9 O. Cls. E., 103.) Therefore, in the class of cases now before the court, those printers who were paid by the “em” have been excluded, and the decision in this case will apply only to those paid by the day.
But, apart from the character of their employment, a question arises as to whether the Government Printing-Office is embraced in the terms of the Tioenty-per-eent. Resolution. It enumerates the Interior Department, “ or any bureau or division thereof.,” and the question now is whether, on the 28th of February, 1867, the Government Printing-Office was a “ bureau or division thereof.” The doubt arises from the complex character of that office, as will be seen by the following enactments:
By the Act August 26,1852, (10 Stat. L., 30,) the Government Printing-Office was designed to do the public printing for both the legislative and executive departments of the Government. It was placed under the charge of a “Superintendent of Public Printing,'” who was appointed by the President and confirmed by the Senate. He was also required to give a bond for the faithful discharge of his duties, which the statute required should be approved by the Secretary of the Interior. He was to receive from the Secretary of the Senate, from the Clerk of the House, and from the several heads of Departments and chiefs of Bureaus all matter ordered by Congress or by them respectively to be printed. By the Joint Resolution June 23, 1860, (12 Stat. L,, p. 117, § 7,) he was also directed to purchase the necessary paper for the public service, “ with the approval of the Secretary of the Interior,” and to report the amount consumed to the Secretary at the end of every fiscal year. Under him were two public printers, the one elected by the Senate and the other by the House, who were in fact contractors for doing that part of the public printing which related to the two Houses of Congress.
But by the Joint Resolution June 23,1860, these contractors were done away with, and the Superintendent was authorized *452 and directed to have executed the printing for all the departments of the Government. By that statute he was to make certain purchases, subject to the approval of the Joint Committee ou Printing of the two Houses, and was to render to the Secretary of the Treasury quarterly a full account of all purchases made by him, of all printing done in his office for each of the Houses of Congress, and for each of the judicial and executive departments. Various other provisions appear, requiring certain of his duties to be performed under the immediate supervision of the legislative department, though as before stated, he was to make certain purchases only with the approval of the Secretary of the Interior, and .was to report to him annually. In a former decision of this court, made before its reorganization in 1863, it was held as follows :
“ Congress has power to create an office the duties of which shall be connected with the business of either or both Houses of Congress, and also with the business of the executive department of the Government, but it cannot authorize either House to fill it.” “ If no special mode of appointment consistent with the Constitution be prescribed by law, then it can only be filled by the President, by and with the advice and consent of the Senate. The office of Superintendent of Public Printing is of that character. His duties relate as well to the business of both Houses of Congress as to that of the executive department of the Government, and the statute which created his office does not direct how or by whom it shall be filled. He is therefore appointed by the President, by and with the advice and consent of the Senate.” {Nicholsons Case.)
It was also held “that an officer of either House, in the sense of the Constitution, must necessarily be one whose duties are confined to the business of that House” which “can have officers for no other purpose; and those officers are but its agents, and cannot have powers more extensive than those of their principal.”
But assuming that the Superintendent of Public Printing was an officer in the executive department of the Government, and that his office was a division or bureau of the Interior Department, there still remain some statutory complications occasioning renewed doubt.
The Twenty-per-cent. Resolution was approved on the 28th February, 1807. On the 22d February, 1867, was also approved *453 the Act providing for the election of a Congressional Printer, (14 Sfcat. L., 398.) It provided that the Senate should elect some competent person “ to tahe charge of and manage the Government Printing-Office;’7 and also 11 that from and after the passage of this act and the election of a Congressional Printer, in pursuance thereof, the office of Superintendent of Pitblic Printing shall be abolishedand, farther, that “this act shall tahe effect from and after its passage.” On the 26th February, 1867, the Senate elected the first Congressional Printer. If he be a public officer, it is certain that he is not an officer in the executive department of the Government, and that his office is not a bureau or division of the Interior Department. But, while the election took place on the 26bh February, two days before the approval of the Twenty-per-cent. Resolution, the Congressional ' Printer did not give security as required by law, nor enter into the possession of the office, until the 1st March; and the Superintendent of Public Printing continued in charge of the Government Printing-Office up to and including the 28th February, 1867.
When the last Twenty-per-cent. Oases were before this court, (9 O. Gis. B., 392,) it was held that laborers in the Medical Department of the Arni5r were not employés in the civil service, nor in a division or bureau of the War Department; but the Supreme Court, on appeal, heid that they were. In view of the radically different constructions which this court and the Supreme Court have repeatedly given to this Twenty-per-cent. Resolution, we deem it just to both parties, claimants and defendants, to withhold a final decision in all of the cases submitted, and to render judgment in one as a best-case, to be carried to the Supreme Court.
For the purposes of an appeal, judgment will be accordingly rendered in favor of the claimant for $55.90.